Good morning, Your Honors. I don't know whether it's appropriate to adopt arguments that have been made in principle on already on the record. Of course, Ms. Babin was here and from the state and heard everything that was said. So I think that it would be fine for you to for you to do that. But if you want to reemphasize anything, that's up to you also. Thank you, Your Honors. What I would like to do is adopt the arguments that have already made in Santos. And with regard to the Gray case, I know that we've extensively briefed that on the disciplinary. And the reason we showed that in this case, in the Gray case, just based on the facts, the court applied HEC in a case where there was no overlap between the disciplinary charges and the statements made in the complaint. So it's the slippery slope that we're, I guess, skiing on or sliding on. We're on the slippery slope where, you know, once you say we're going to apply HEC, which requires criminal convictions, underlying criminal sentencing, and that and so forth, to prison disciplinary proceedings that are decided by co-employees that also work at the prison, where they don't have the Sixth Amendment protections. We get on the slippery slope of situations where there is no overlap. And just because there is a disciplinary report out there from the same day that has a loss of good time credits, the case is dismissed. So we really, if we follow Mohammed, and if we cut and paste Section 4 of the Born decision into this decision, and we don't reach to the Qualified Immunity section of Born, we shouldn't be making these Fourth Amendment analysis as though we're dealing with an arrest with Sixth Amendment protections that have resisting arrest charges on them for excessive force. And that's basically what I think sounds like it's the easy thing to do, but really the blanket rule of HEC. And if I may indulge the Court's time, I want to read the quote from HEC, what the Court actually wrote, because we seem to be getting so far removed from what the Court actually wrote. We hold that in order to recover damages for alleged unconstitutional conviction or imprisonment or for other harms caused by actions whose unlawfulness would render a conviction or sentence invalid, the plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under 1983. So just to emphasize that, a claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under 1983. So that's not where we are here, because these cases do not challenge the loss of good time credits. They don't challenge the hearing. They won't . . . a favorable jury verdict does not restore the loss of good time credits. Heck, it doesn't apply, but the Court goes on, thus, when a state prisoner seeks damages in a 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. If it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. As we well know, prison disciplinary proceedings do not lead to a conviction, and in this case, there's no challenge to any loss of good time credits, but if the district court determines that the plaintiff's action, if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, that action should be allowed to proceed in the absence of some other bar to the suit. So that's the law, and then if we look at Borne, I've read what Judge Stewart wrote on the IFP on the Castro case, and if we just look at Borne, the section that I'm asking Your Honors to, that Your Honors wrote, got two judges on that panel here, the Court says, a plaintiff asserting a 1983 claim may not recover damages for alleged unconstitutional conviction or imprisonment or for other harms caused by actions whose unlawfulness would render a conviction or sentence invalid unless it proves that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determination, or called into question by a federal court's issuance of writ of habeas corpus. Sighthead. Heck's principle extends to disciplinary convictions. Heck, however, is not implicated by a prisoner's challenge that threatens no consequence for his underlying conviction or the duration of his sentence. That's the rule. It should be applied to this case. It comes from the same rules in Muhammad, Supreme Court case, the Heck case. Borne contends that Heck has no bearing in this case because he has no interest in good time credits because of his incarceration for an aggravated charge. Liberally construing Borne's appellate contentions and reviewing the question of law de novo, United States v. Martinez, Fifth Circuit case, we determined that Heck and its pharogeny do not bar Borne's excessive force claims. Borne was convicted of tampering with his cell door and creating a disturbance in connection with the use of force, resulting in a forfeiture of 30 days good time credit. The district court determined that Heck bars excessive force claims because, quote, if true, they would implicate the invalidity of its disciplinary conviction for creating the disturbance that resulted in the use of force. Quote, end quote, that's what the district court had written. This court said, to the contrary, Borne's 1983 excessive force claims implicate neither the validity of his underlying conviction nor the duration of his sentence. That's an easy inquiry for district courts to follow. Is there a challenge to the good time credits? No. Will he receive a return of good time credits? No. That's easy, and so, and that's the law, and that's what should be, that's what should be applied in these cases. Then the court goes on, Borne's underlying conviction is for aggravated assault with a deadly weapon. A fine of excessive force here would have no bearing on that conviction, nor would it negate his disciplinary conviction, potentially affecting the duration of his sentence by storing his good time credits. Borne was disciplined for so forth and so on, but this court, we are asking, and the court concludes all the way down to, a ruling in Borne's favor on his excessive force claim would not affect his underlying conviction, his disciplinary conviction, or the duration of his sentence. Accordingly, heck in his ferogeny, do not bar Borne's excessive force claim. We're just asking, sorry, we're just asking for this same ruling to apply in all of these cases. There's, there's, there's no other inquiry, and there's no basis to hold a prison disciplinary proceeding to the same status as a Sixth Amendment criminal proceeding with all the due process that comes along with the Sixth Amendment. Thank you for indulging my, my reading to the court, I, I'm sure that's . . . That's okay, it worked out, it worked out fine, Ms. Grodner. Thank you, Your Honor. And you've saved time for rebuttal. Ms. Babin? Good morning, Your Honors, and may it please the Court, Amber Babin, for the rebuttal. Ms. Babin, Assistant Attorney General, representing Craig White, John Wells, Michelle Sullivan, and Lyndell Slater, appellees and defendants in this matter. We're asking this Court to affirm the lower, the lower court's ruling, finding that, um, Mr. Gray's first two claims of excessive force regarding the alleged beating in his cell during transport to the showers, as well as the use of the chemical agent in the shower, were barred under Heck v. Humphrey. As of the third claim regarding transport, the District Court properly found that that, that Mr. Gray failed to exhaust his administrative remedies. Um, this incident occurred on March 20, 2016, at approximately 8 a.m. Mr. Gray was found in his cell, seemingly intoxicated, he had slurred speech, his eyes were red, and he had vomited all over his cell. What occurred in the next several minutes led to Mr. Gray's allegation that he was beaten four times by the officers during a single encounter. Mr. Gray received multiple disciplinary convictions and a 90-day loss of good time credit for the incident. Opposing counsel ignores that he lost good time credit, but he did. Specifically on March 28, 2016, at the disciplinary board hearing, plaintiff pled guilty to intoxication from the incident in the cell, and he was found guilty of three counts of defiance, four counts of aggravated disobedience, and one count of property destruction. He was issued disciplinary sanctions, including the loss of the phone and canteen privileges, ten days in isolation, and he forfeited 90 days of good time credit. Okay, so, uh, since there seems to be a dispute about the record on the good time credits, can you direct us to where we will go to find that, and then I'll ask Ms. Griner on rebuttal to tell us where in the record we'll find it. It's in the disciplinary report. Um, it's an aggravated dis—I don't have—I'm sorry, Your Honor, I don't have the page number, but it's an aggravated disobedience, uh, aggravated disobedience and defiant disciplinary report that was authored by one of the officers that says that he lost 90 days of good time. And it's, it's in this record? Yes, Your Honor. Um, the district court correctly noted that to evaluate Mr. Gray's claims of excessive, excessive force as to the alleged beatings in the cell and during transport to the shower and in the shower, the court would be required to evaluate the need for the force used by reconsidering the disciplinary board's findings that Mr. Gray was intoxicated and that he was engaged in aggravated disobedience, defiance, and property destruction. The court noted in its ruling denying the motion for new trial that it looked to the totality of Mr. Gray's conduct. Um, his disciplinary convictions were all handed down on one day minus contraband, which was imposed later, I believe, because they needed to test the substance. So the disciplinary board hearing considered the totality of his behavior on that day in handing down his convictions, including the 90-day loss of good time credit. So, as I mentioned, the district court treated this as one incident, from the cell, transport to the shower, and in the shower. And the record supports this. Um, in the district court's ruling, it writes, plaintiff alleges that he was beaten four times during a single encounter with corrections officers during an incident that occurred over the course of several minutes. Plaintiff alleges that the excessive force used by defendants resulted in ankle and wrist lacerations, a blackened eye, a fractured nose, and a bruised kidney, meaning there is no allegation that the separate uses of force caused separate injuries. It was just one single encounter that occurred over the course of several minutes. Um, Mr. Gray adamantly maintains that he's not challenging the validity of his disciplinary conviction or the loss of the good time credit in order to circumvent the HEC bar, but it's clear that he is. If his claims are to proceed, the court would have to analyze the validity of the disciplinary convictions or potentially restore his good time credit. He doesn't have to directly challenge the loss of good time credit. That's what he's doing. He's trying to circumvent HEC by saying that he's not challenging, but he inherently is. So long as he makes his allegations inconsistent with the disciplinary convictions having been valid, HEC bars his civil suit. He maintained that he did absolutely nothing wrong throughout the entire incident. He denied that he was ever intoxicated, even though he pled guilty to that offense. And he has never submitted any evidence that these disciplinary convictions have been reversed, expunged, invalidated, or otherwise called into question. So I realize we're here because of the Born case, and we believe that Born is distinguishable. In this case, as I mentioned, the disciplinary board considered what occurred in the cell and what occurred in the shower together. They considered that in handing down his convictions where he forfeited 90 days loss of good time. In Born, after acting out, the plaintiffs were restrained and they stopped resisting. We don't have that kind of break in this case. We have a building of events that occurred with Mr. Gregg, starting in the cell, eventually escalating in the shower. He never, even when he was restrained, he did not stop resisting. It wasn't until they were able to transport him out that the altercation was over. Even when they were trying to restrain him, he continued to kick and spit at the officers, and that's shown in the disciplinary reports. I'd like to talk a little bit about his failure to exhaust the third claim, where he argued that the officers allegedly used excessive force during transport to medical from the shower, and we believe that the district court correctly concluded that he failed to properly exhaust his administrative remedies. In order to find whether or not that occurred, we have to look to the grievance procedures applicable to Hunt Correctional Center, which is set forth in the Louisiana Administrative Code at Title 22, Part 1, Section 325. Review of these provisions tell us that Mr. Gregg was required to present as many facts as possible to answer the questions, who, what, when, where, and how, concerning the incident. He alleges in his administrative complaint that Captain Wells and Lieutenant Sullivan came to his cell because he vomited, tried to get him to inform another offender, and that when he refused, Captain Wells spent five minutes in his cell beating and kicking him. He never alleged anything after what occurred in the shower and on the way to medical. He attempts to rely on one sentence in the complaint, even while in restraints, Captain Wells proceeded to beat me. Captain Wells was involved throughout the entire incident, so that doesn't have any specificity. It's not specific enough. No way meets the requirements of the Louisiana Administrative Code. It's an isolated reference. It cannot reasonably indicate that he was complaining of force used to transport from the showers to medical. So his grievance fails to present a chronology of events, and that one sentence, it can't be read in context with the rest of the complaint. If you look at the investigation's report, it's completely silent regarding any alleged use of force from the showers to medical. Any arguable reference was made by another inmate's letter, Lawrence Gaines. But the Administrative Code tells us that the grievance must be written by the offender and on his own behalf. So Mr. Gaines' letter complaining about an alleged beating in no way exhausts his administrative remedies. It doesn't count for him. So we're asking this court to affirm. Again, Mr. Gray had alleged three separate excessive force claims, but we believe the good time credit, the district court correctly considered the incident in the cell during transport and in the shower as one incident, and he's maintained his innocence the entire time and never provided any evidence that those disciplinary convictions have gone away. And also, we believe that he failed to exhaust his administrative remedies regarding the alleged beating during transport to medical. And so we ask this court to affirm. And if the court has any questions for me, I'd be happy to answer them, and if not, I will yield my time. All right. Thank you, Ms. Babin. Thank you. Mr. Brodner? Thank you, Your Honor. We'll save time for Bo. Your Honors, Judge Smith, I believe you asked, what is the record site for the 90 days? Yes. And I've got ROA 536, and that is, that particular incident, that particular write-up is for resisting and disobeying direct verbal orders, stop resisting, comply with my orders by continuing to resist while he was in the Beaver 5 shower. So, this incident, and I think I pointed out in my brief that there was, our brief, our complaint does not claim a beating took place in this shower. It did claim a beating taking place in one of the showers, but I believe it was the Beaver 2 shower. So we pointed out in our brief, there was no overlap between this particular write-up and the incidents that took place. Now, the State Defendant would like to say that, well, these are three separate cases. They're three separate, distinct claims. They're not. They're one incident. It's a continuous beating. Once a four starts until it ends. It's continuous. It's ongoing. Under the rules affecting the ARPs at these prisons, they're not written for, you know, law students to apply. They're written for people, a lot of times, with little high school education to follow. All they're required to do is put the officials on notice, time, place, incident, person. They are not required, by any hyper-technical rulings, to list each and every punch, kick, the ones that happened on the walk. Well, you didn't list the ones that happened when you turned the corner, or you didn't list the ones that happened when you got into the shower. They don't have to list each and every punch and kick and each and every place where they were punched and kicked, particularly in cases such as this one where the inmate claims he was unconscious during part of it. All they have to do is put them on fair, reasonable notice so that they can conduct their investigation and respond to the ARP. And certainly, the ARP in this case does that. So the ARP that was filed by Mr. Timothy Gay was sufficient to put these correctional officers and administration on notice of an incident, of a beating that happened, started in Beaver 2, and he was taken to medical afterwards, and he does claim that. With regard to saying that Bourne is distinguishable, I mean, we've got to go back to what's the core law here, and is this court going to treat disciplinary write-ups as though they're criminal convictions when they don't affect, this lawsuit doesn't challenge any loss of good time credits. A favorable jury verdict will not restore any good time credits. He couldn't possibly go to court on a habeas corpus on this case as an avenue of relief, which is the opposite of 1983. This is a 1983 damage case. It doesn't implicate, there's no heck implications here because there's no effect on the sentence, his underlying conviction, or any time that he's going to serve. Because if we reach a jury verdict, win or lose, we're not getting any time restored, no matter when the time was lost. So the inquiry and doing a Fourth Amendment inquiry as though this is a resisting arrest case is simply inappropriate without there being really criminal charges. And if there were criminal charges against Mr. Timothy Gray, well, you injured an officer or you committed some sort of battery or assault, that would be something that would be heard by the criminal courts and there would be a disposition, case dismissed, guilty, not guilty, what have you. And he would have his Sixth Amendment protections of right of confrontation, the right to have counsel. In these disciplinary proceedings, all they do is go by the credibility of the officers. Well, there's five officers and they have more credibility than you, you're guilty. So I ask this court to reevaluate any inclination the court may possibly have to elevating criminal disciplinary proceedings in a Garden Variety 1983 case as a bar to proceeding in those cases. Thank you, Your Honors. Thank you, Ms. Gardner. These cases are under submission and the court is adjourned.